J. L. GILLESPIE, Appellee, v. GEORGE M. ASHFORD, W. F. SWAYZE, and F. H. GREENWALT, Appellants.

**Master and servant:** WRONGFUL DISCHARGE: RECOVERY OF DAMAGES:
1 INSTRUCTIONS. Where one contracts to perform service for a specified time and is discharged prior to the expiration of the contract, he is not required to remain at the place where the service was to be rendered to authorize a recovery of damages for the wrongful discharge, provided he has used reasonable diligence to obtain other like employment and saw no prospect of securing the same.

**Instructions:** WITHDRAWAL OF EVIDENCE. In an action by an employe for a wrongful discharge from service under a contract for a fixed time at a stated compensation, where the employer pleaded no cause for discharge and interposed no counterclaim, except failure to secure a certain mining claim, but alleged that the employe had been paid all his service was reasonably worth for the full period of the contract, an instruction in effect withdrawing evidence of the employe's failure to work as directed so far as it had any bearing on the question of discharge, was not objectionable as eliminating the issue as to the value of plaintiff's service, although omitting to point out its proper application; nor was the same prejudicial though perhaps somewhat ambiguous.

**Evidence:** COMPETENCY OF WITNESSES. A witness who was in the United States at a particular time was not competent to testify to the demand for labor in Alaska at that time; nor will a knowledge of the value of mining claims in one district render a witness competent to state their value in another, where there was no showing of similarity in value.

**Refusal to submit issue.** Where there was no competent evidence of a counterclaim, refusal to submit it was not error.

**Verdict:** IRREGULARITY. Where two forms of verdict were submitted on the same sheet, and the jury inserted in that for plaintiff the amount found due him, and the same as returned was treated by all parties as a verdict for plaintiff, the irregularity of the foreman in signing the defendant's form did not invalidate the judgment.

**Review of verdict.** Exception simply to the court's ruling on motions in arrest of judgment and for a new trial will not authorize review of the judgment. There must be proper objection and exception to the judgment entered.

**Judgments:** PRESUMPTION. It will be presumed on appeal that a judgment was entered for the party in favor of whom the verdict was in fact rendered.

*Appeal from Story District Court.*— HON. J. H. RICHARD, Judge.

TUESDAY, DECEMBER 13, 1904.

ACTION at law upon a written contract for work to be performed by plaintiff for the defendants in Alaska. It is alleged that plaintiff commenced work thereunder about June

24, 1900, and performed labor for the defendants until September 4th, when, without cause, they discharged him; that plaintiff was unable to obtain other employment, and was damaged by reason of his discharge in the sum of $100, for which amount, with interest, he demanded judgment. Defendants admitted plaintiff's employment, but denied all other allegations of the petition. They further pleaded that at the time plaintiff quit their employ there was an abundance of work in Alaska, but that he would not accept it; that he (plaintiff) failed to do the work called for by the contract, and, by reason of his failure to do so, defendants lost some valuable mining claims and rights, which they would not otherwise have done, entailing a loss to them of $500; that during the time plaintiff was in Alaska he claimed that the climate did not agree with him; that he was sick and would stay in bed a great number of days at a time; and that his services were not worth the sum actually paid him, to say nothing of his present claim. They also pleaded a settlement with plaintiff, and demanded judgment against him for the amount of their loss. In reply, plaintiff denied that there was any other work for him in Alaska, and further alleged that he performed all the work required of him by the defendants, their agents and servants, and denied that he was to locate any claims. He also denied all other affirmative allegations of the answer and counterclaim. On these issues the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendants appeal.— *Affirmed.*

*J. F. Martin* and *B. B. Welty,* for appellants.

*Fitchpatrick & McCall, E. H. Addison* and *Crockett, Gillespie & Bannister,* for appellee.

DEEMER, C. J.— By the terms of the written contract between the parties, plaintiff was to work as a laborer for the defendants for at least three months after a schooner

known as " Louisa D." reached Cape Nome or adjacent
waters in Alaska, at the agreed compensation of $150 per
month and board.   Other services were contemplated, which
need not be set out at this time.   The labor to be performed
by plaintiff in Alaska was to be such as defendants directed
him to perform; and it was further agreed that plaintiff,
under the direction of the defendants, should prospect for
minerals, locate mining claims and other properties, and,
on demand, give defendants a quitclaim deed to a three-
fourths interest in all locations so made.   Plaintiff entered
upon his employment and reached Alaska June 24, 1900.
He performed work under his contract until September 4,
1900, when he was either discharged by the defendants, or
voluntarily quit their employment; the latter being a mat-
ter of serious dispute between the parties.   Plaintiff re-
mained at Cape Nome — as he says, endeavoring to find
employment — until September 9th, and, being unable to
do so, he took passage on a vessel bound for Seattle, Wash.;
arriving at that port September 22, 1900.   From there he
went to Tacoma, where he spent a few hours; thence to Port-
land, where he spent part of a day; thence to Salt Lake,
Utah, and from Salt Lake to Iowa; and, after resting a few
weeks here in Iowa, he went to Iowa City to attend school.
As already stated, there is a sharp conflict in the testimony
regarding the reason why plaintiff ceased work under his
contract.   Under the issues, this was for the jury to deter-
mine.   If they believed plaintiff and his witnesses, they
were justified in finding, as they evidently did, that he was
discharged without cause, and that he did not voluntarily
quit his work.   Defendants do not claim in their pleadings
that they discharged him either with or without cause;
hence that issue is not in the case, save as it is tendered by
the plaintiff in his petition, which was responded to by the
defendants by saying that plaintiff was not discharged, but
that he voluntarily quit work.

The principal contention of appellants is that the court erred in its instructions regarding plaintiff's duty to secure work after his discharge, in the event the jury found that there was a discharge, and in failing to give certain instructions asked by them with reference to this matter. The exact point is that the court did not correctly instruct as to plaintiff's duty from the time he left Alaska, September 9th, to the end of his term under the contract, September 24th. The instructions given by the court with reference to this matter read:

1. WRONGFUL DISCHARGE: recovery of damages; instructions.

(5) If you find that plaintiff was discharged from his said employment, consider the second matter already indicated. That matter is this: After plaintiff's discharge, if discharged, did plaintiff use reasonable diligence to secure employment at said place? The burden is upon plaintiff to show that he did. If, then, upon considering this matter, you find and believe from the evidence that plaintiff did use reasonable diligence to secure employment, and failed, then you may allow him on account of this against defendants $5 for each day that he remains at said Nome after said discharge and failed to find employment. You will observe that there will remain some time from the time plaintiff left Cape Nome to go to Seattle, to the end of said three months, to-wit, September 24, 1900. Now, as to that time, if you find and believe from the evidence that no employment could then have been had by the use of reasonable diligence at said Cape Nome by plaintiff up to said September 24, 1900, then you may allow him on account of such time the sum of $5 per day for each day thereof. The total amount, if anything, allowed by you for plaintiff, shall not exceed the sum of twenty days, at five dollars per day, with interest on the amount so allowed by you, if anything.

(6) "Reasonable diligence," as used in these instructions, as meant by them, is such diligence as a man of ordinary care and prudence, desiring work, would make, under the circumstances surrounding plaintiff at said place, to get it. In other words, the reasonable diligence that plaintiff should have made at said place to obtain employment is such care or diligence as such a man at such a place, desiring

work, would ordinarily and reasonably make to get it. As to what such effort or diligence is in this case, you are to determine from the facts and circumstances surrounding the matter at the time in question.

Defendants asked an instruction to the effect that, even if plaintiff was unable to find work from September 4th to the 9th, yet they would not be liable for wrongful discharge for the time between September 9th and 20th; being the time that plaintiff was on the water between Alaska and Seattle. The broad statement contained in this request cannot be the law. If plaintiff made reasonable and proper efforts to find employment during the five days he was in Alaska after his discharge, and was unable to do so, he was not obliged to remain there during the entire period covered by his contract, if to do so would have been fruitless. Of course, it was for the jury to say whether or not he might have obtained work, had he remained, and this was submitted to them under the instructions given. The charge correctly states the law, at least in so far as it undertook to cover the point, and the one asked is undoubtedly erroneous.

The case presents rather an unusual feature, but the rules of law applicable thereto are not in serious dispute. The reason why one discharged from employment is bound to find other work of the same general nature, if by reasonable diligence he may do so, is because it is his duty to save his employer as much as he reasonably can. Had plaintiff, after making reasonable efforts to find employment after his discharge, secured none, and, having no reasonable prospect of finding any in the future, still remained in Alaska, and in bringing suit had sought to charge defendants with his board and expenses while he remained in Alaska on an unreasonable and fruitless search, we think defendants might well have said: " You cannot in this manner augment your damages. You should have gone home when you discovered the situation, and not stayed in Alaska at our expense, when

it was apparent there was no work there to be done." More-
over, defendants paid plaintiff's expenses home, and con-
sented to his taking the boat at the time he did. This in
itself is a sufficient answer to defendants' contention.

II.    Defendants did not plead that they discharged
plaintiff for cause, and they interposed no counterclaim for
his failure to perform work as agreed, save that by reason of
such failure they lost a mining claim, damag-
2. INSTRUCTIONS:
   withdrawal       ing them to the extent of $500.  They also
   of evidence.     pleaded that they had paid plaintiff all that his
time was reasonably worth, had he remained for the full
period of his employment.  Testimony was introduced pro
and con regarding plaintiff's failure to work as directed, and
the trial court thus referred to the matter in its charge.

Evidence was introduced bearing upon the question of
whether or not plaintiff performed the work that he was
ordered to do, or failed to perform it, and whether he at-
tended to the work that he was directed to do while employed
under his contract.  It has been urged and claimed that
there was in plaintiff's performance of his work under said
contract, or in his failure to perform it while so employed,
a good reason for his being discharged.  You have already
been instructed that the only question as to this matter is
this:  Was the plaintiff in fact discharged, or not?  The
intention of the court by this is to take from your considera-
tion the sort of testimony that is referred to in this instruc-
tion, in so far as the same has bearing upon the question of
whether or not plaintiff was in fact discharged.  The court
does not intend to direct you in this instruction as to whether
or not the testimony herein referred to has any bearing in the
determination of this case in some other aspects.

This is complained of because it is said to be ambiguous,
and because it withdraws certain of defendants' defenses,
viz., the value of plaintiff's services.  Had defendants
claimed that they had discharged plaintiff for cause, the in-
struction would undoubtedly have been erroneous, but they
made no such defense.  Again, had the counterclaim been

for anything else than failure to do certain work which caused the loss of a mining claim, the instruction might have been erroneous, although the saving clause in the last paragraph might be construed so as to cover this. The contract fixed the price and value of plaintiff's service, and, so long as he performed or undertook to perform it, and was continued in the defendants' employ, they were bound to pay the contract price. A counterclaim would perhaps lie for failure to perform the work according to agreement, and this was interposed; but the facts therein recited have reference to a particular damage, and the evidence should be confined to that point. The last clause of the instruction, while perhaps a little ambiguous, in that it does not say for what other purpose the evidence might be considered, was not prejudicial to the defendants, for, as we shall hereafter see, it could only have referred to plaintiff's diligence and efforts' to find work, or to do the work required of him with reference to the location of claims. On these propositions the testimony may have had some bearing, but, in any event, defendants were not prejudiced by the instruction as given, the import of which was that the testimony should not be considered on the question of discharge, but might be on some of the other issues in the case.

III. A witness who was not in Alaska in September, 1900, but in the United States, was asked as to the demand for labor in Alaska during September. An objection to the question was sustained because he was not in Alaska, and did not and could not know of the situation there at that time. On the face of it, this ruling was correct. Another witness was asked as to the value of " these mining claims up there." No specific claim was named, and the testimony was irrelevant. He had spoken of mining claims at Cape Nome and Topkok, but the one defendants claim to have lost was at Cripple Creek, and there was no showing that the witness knew the value of

3. EVIDENCE: competency of witnesses.

claims in that district, or that they were the same there as elsewhere. Some other rulings on evidence are complained of, but they are not of sufficient importance to demand separate consideration. Suffice it to say that we discover no error.

IV. The court did not submit defendants' counterclaim for loss of mining claim to the jury, and of this complaint is made. As there was no competent evidence of the value of such claim, the trial court was right in not submitting that issue. Most of the complaints made by defendants are based upon propositions not raised by the pleadings. They made no claim that plaintiff was discharged for cause. This fact is significant, and answers most of the points now relied upon by them.

4. REFUSAL TO SUBMIT ISSUE.

V. Under the issues, it was not a question of how much plaintiff's services were in fact worth to defendants, but, was he discharged by them, and did he use reasonable efforts to secure other employment? The counterclaim was for a specific item, and there was no proof to sustain it. The value of plaintiff's services could not be made an issue, in the way in which it was presented in defendant's answer. No matter what the value in fact, the parties agreed upon it, and defendants were bound to pay the sum so fixed, unless they discharged plaintiff for good cause. They might, perhaps, counterclaim for failure to properly perform the services as agreed, but they could not plead in mitigation or state such facts in defense as would be warranted had the action been upon *quantum meruit*. Sutherland on Damages (2d Ed.) volume 1, section 171, and volume 2, section 695, and cases cited.

VI. In referring to the forms of verdict, the court instructed as follows: " Attached hereto are two forms of verdict. One of the forms is: ' We, the jury, find for the plaintiff, and assess the amount of his recovery against defendants in the sum of $ —— dol-

5. VERDICT: irregularity.

lars.' The second form of verdict is: 'We, the jury, find
for the defendants.' Having agreed upon your verdict, you
will cause one of the forms to be filled out to correspond
therewith, then cause the same to be signed by one of your
number as foreman, and have it returned into court as your
verdict, unless otherwise directed by the court."

The verdict, when returned, read in this wise:

"We, the jury, find for the plaintiff, and assess the
amount of his recovery against the defendants in the sum of
$113.91 dollars.

"We, the jury, find for the defendants.

"Melvin Brooks,

"Foreman."

This is. said to be ambiguous and insufficient in law
upon which to base a judgment. The manner in which the
mistake occurred is not hard to account for. The foreman,
after filling in the amount of plaintiff's recovery, which was
the exact amount due him, with interest, evidently over-
looked the line for his signature, and, as the two blanks were
on the one sheet of paper, signed his name upon the second
blank line. Indeed, that was the only one in the form of
verdicts handed to the jury which bore the name "Fore-
man," as indicating where he should· sign. The figures
"113.91" were written into the blank space left for that
purpose, and the foreman naturally signed at the place indi-
cated for his signature. He evidently overlooked the line
appearing between the two forms of verdict, or, if he saw
it, found no such designation for his signature as the word
"Foreman," written under the second line. We must as-
sume that the figures written into the blank form of verdict
for the plaintiff were placed there for some purpose, and
must also assume, from what afterwards transpired, that,
when the verdict was read as by statute provided (Code, sec-
tion 3722), it was read as being for the plaintiff. Defend-

ant's counsel made no objection to it when returned, but did complain of it in their motion for a new trial. At least, they insisted that the verdict was ambiguous. Before anything was done by the court after the receipt of the verdict, they filed a motion for a new trial, evidently on the theory that the verdict was against them, and at no time claimed that the verdict was for their clients. It is a general rule that written words are to prevail over printed ones, and that words or figures deliberately inserted into blanks are for some purpose, and, other things being equal, they are controlling over the printed ones. The amount inserted in the blank for the plaintiff was the exact amount to which he was entitled, including interest, if the jury found for him. The signature on the bottom line is the only thing which tends to throw doubt or ambiguity on the verdict. It was either for the plaintiff or for the defendants, and it could not, in the nature of things, be for both. Defendants do not claim it was for them. So it must have been for the plaintiff. Giving due significance to the part deliberately written into the blank, and disregarding the place of the foreman's signature, there is no doubt as to whom the verdict was intended for. Add to this the fact that it must have been read as being for the plaintiff — for the defendants immediately filed a motion for a new trial, and the trial court, with full knowledge of all the circumstances, rendered judgment for the plaintiff — we think there is no such defect as to rob plaintiff of his victory.

Informalities, verbal inaccuracies, and technical defects in such matters are always disregarded. *Levine v. R. Co.,* 177 Mass. 204 (58 N. E. Rep. 685); *Morrison v. Overton,* 20 Iowa, 465; *Jones v. Julian,* 12 Ind. 274. In the *Morrison Case* the foreman did not sign either form of verdict, but the filling in of the blank, with the reading thereof as being for the plaintiff, was held sufficient. On the face of it, there was no written evidence in that case as to who the verdict was for, save the amount filled in the blank, which was read

as being the verdict. Here there is the same evidence, but there is also a written signature, which was evidently placed on the wrong line. If signature by the foreman is not an essential, his signature at the wrong place cannot be held controlling. Ordinarily we would assume that the verdict was read just as it now appears, but the conduct of all the parties concerned overcomes this presumption. Defendants would not be filing a motion for a new trial if they believed the verdict was for them, nor would they have done so if they thought it was so ambiguous that no judgment could be rendered thereon. Indeed, this is not a ground for a motion for a new trial, and that part of it wherein they claimed that the verdict was ambiguous was properly disregarded by the trial court. We refer to it simply to show how the verdict was regarded by all the parties at the time it was received.

True, the defendants excepted to the ruling of the court on their motion in arrest and for a new trial, but they did not in specific terms except to the judgment as rendered by the trial court. In order to secure a review of 6. REVIEW OF VERDICT. the matter by this court, it should appear that there was a valid exception, not only to the rulings of the court on the motions, but that the court's attention was called to the matter by a proper objection and exception to the judgment. This does not sufficiently appear.

In *Capen v. Stoughton,* 16 Gray, 364, the jury by mistake signed a verdict for the wrong party. At a subsequent term the court heard oral testimony to the effect that a mistake had been made, and, after hearing the evidence, rendered judgment for the party in 7. JUDGMENTS: presumption. whose favor the jury in fact found. This course was approved by the Supreme Court of Massachusetts. Practically the same course was adopted in the Levine Case, *supra.* If the trial court may receive evidence after the term at which a verdict was returned as to who it was in fact for, it may certainly do so during the term. In this case the court evidently satisfied itself as to who the ver-

dict was for, and rendered judgment accordingly. We must presume in favor of the action of the trial court, and assume that it found that the verdict was in fact for the plaintiff. This it must have done, else it would not have rendered judgment for the plaintiff.

VII. Defendant's last contention, that the verdict is without support in the evidence, is without merit.

There is no prejudicial error in the record, and the judgment is *affirmed*.