MARY E. WILSON, Appellant, v. JOHN McCARTY, Appellee.

Misconduct: ARGUMENT: REVIEW ON APPEAL. The unverified statement, in a motion for new trial, of alleged improper argument of counsel is not a sufficient showing of misconduct to authorize its review on appeal.

Trial: VERDICT: SUFFICIENCY. A verdict is sufficient to authorize a judgment if it clearly expresses the intention of the jury. The verdict for defendant in this action for breach of marriage prom-

ise which had appended to the form as prepared by the court the words "not guilty" was not thus rendered insufficient; especially as plaintiff did not ask to have the jury reform or correct it in any manner, but simply raised the question of its sufficiency in a motion for new trial.

*Appeal from Davis District Court.*—HON. FRANK W. EICHELBERGER, Judge.

THURSDAY, OCTOBER 17, 1912.

ACTION for breach of promise of marriage. Trial to a jury. Verdict and judgment for defendant, and plaintiff appeals.—*Affirmed.*

*T. P. Bence,* for appellant.

*Payne & Goodson,* and *F. Thompson,* for appellee.

DEEMER, J.—Plaintiff is a widow, who at the time it is claimed the promise of marriage was made was sixty-two years of age. She lived at the town of Drakeville, and owned the cottage in which she lived, and some other property. Defendant, who was at the time in question seventy-seven years old, was a widower, and he, too, lived in Drakeville. Plaintiff claims that defendant called upon and courted her for more than two years, and that some time prior to July 1st he promised to marry her; that since that time he has denied the promise, and refused to marry her. Defendant denied the alleged promise, and also pleaded that plaintiff was diseased, and in such a mental and physical state that marriage was impossible. This was pleaded not only in justification of his refusal, but also in mitigation of damages. He further pleaded that plaintiff was mentally incompetent to enter into a contract of marriage; that her mind is and was unbalanced, and that her case was under investigation by the commissioners of

insanity; and that she was therefore incapable of entering into the marriage relation. He also pleaded that plaintiff falsely accused him with having sexual intercourse with her, and falsely claimed that, as a result thereof, she was made pregnant, and that she maliciously circulated such reports against him.

After this answer was filed, plaintiff, in an amendment to her petition, alleged, "that after said promise of marriage alleged in petition the defendant, in further abuse of this plaintiff, and to her great grief, humiliation, mortification, and mental anguish, after trying all seductive arts in his power to induce the plaintiff to have sexual intercourse with him, and in failing therein so to do, he accomplished said purpose with her by force and against her will, to her great humiliation, shame, grief, mortification, and mental anguish, and, to prevent her from taking action thereon, attempted to pacify her and quiet her by holding out to her that they were morally man and wife, and that said acts would be covered and excused by their subsequent marriage, and thus induced her for a reasonable time to keep quiet on said subject and trust in him and rely on what she supposed to be his honor; and the said seductive and sexual intercourse was brought about and accomplished by said defendant by force, under and by virtue of said contract of marriage. The plaintiff, relying upon said contract of marriage as set forth in petition, yielded up her virtue to said defendant, and was on account thereof seduced by him, which matters are hereby pleaded in aggravation of damages."

This was denied by defendant, and the defenses already mentioned were repleaded with some additions. Many other pleadings were filed, which need not be noticed at this time. On these racy issues the case was tried, and the jury found for defendant. Little, if any, of the testimony is in the record; but we may assume from the instructions that it followed the issues made by the pleadings.

There are but two propositions relied upon for a reversal, and these are misconduct of defendant's counsel in argument to the jury and insufficiency of the verdict returned.

I. As to the first proposition, there is no such showing of misconduct that we may consider the point. The only record relied upon is an unverified statement, made in the motion for a new trial, as to what counsel said. The trial court made no finding as to what was said, and the remarks were evidently not taken down by the shorthand reporter. If any finding was made by the trial court, it may well be inferred that it was to the effect that no such statements were made; for the motion for new trial was overruled. *Everett v. Railroad Co.,* 73 Iowa, 442. Even if the remarks attributed to counsel were made, they are not sufficient to justify a reversal. What was said was in explanation of defendant's absence from the courtroom at the time the argument was being made, and they were in no manner prejudicial.

1. MISCONDUCT: argument: review on appeal.

II. The court submitted two forms of verdict to the jury. One reading: "We, the jury in the above-entitled case, find for the defendant. ———, Foreman." When the jury returned with its verdict, it was in this form: "We, the jury in the above-entitled case, find for the defendant, not guilty. Wm. Plank, Foreman." The words "not guilty" were written in in ink by some member of the jury upon the form submitted by the court. Plaintiff excepted to the verdict when returned, but did not ask the court to have the jury reform it, or for its correction in any way, but in her motion for a new trial claimed that it was insufficient to justify a judgment for the defendant. The same point is made here for a reversal. The proposition that the verdict is insufficient is without merit. It was a clear finding for the defendant, and would indicate that some of the jurors had knowledge of the old form of

2. TRIAL: verdict: sufficiency.

verdict in such cases, which was "not guilty." How the words came to be appended is not shown; but that they do not change the effect of the verdict submitted to the jury is quite clear. Under the Code, a verdict is sufficient if it expresses the intention of the jury. Code, section 3731. And section 3732 authorizes the court to put the verdict in form. In doing this the court might very well treat the words "not guilty" as surplusage, and this is exactly what was done. The Kentucky court used these words in considering a like question: "While the letters of the immortal Junius shall continue to be read, or whilst the trial by jury continues to be something more than a mere name, we hope the case of *Rex v. Woodfall* will never be acknowledged as a fit example for American courts. . . . Though the verdict may not conclude formally or punctually in the words of the issue, yet if the point in issue can be concluded out of the finding, the court shall work the verdict into form and make it serve. Verdicts are not to be taken strictly like pleadings; but the court will collect the meaning of the jury, if they give such a verdict that the court can understand them." *Worford ·v. Isbel,* 1 Bibb (Ky.) 247 (4 Am. Dec. 633). See, also, *Wright v. Clark,* 50 Vt. 130 (28 Am. Rep. 496); *Gillespie v. Ashford,* 125 Iowa, 729.

There is no merit in either of the contentions made for appellant, and the judgment must be, and it is—*Affirmed.*