LUTIE GIBSON et al., Appellees, v. IOWA LEGION OF HONOR, Appellant.

**APPEAL AND ERROR:** Decisions Reviewable—Date of Entry of Judgment—Necessity. In order to treat an appeal as being from the final judgment, the record on appeal must show, in some manner, *that such judgment was entered of record before the abstract was filed.* Sec. 4114, Code Supp., 1913.

**APPEAL AND ERROR:** Notice of Appeal—Indefinite Notice—Presumption. When the appellate court cannot indulge the presumption that an appeal was taken from the *final* judgment (because the appeal record fails to show that such judgment was entered of record prior to the filing of the abstract), it will be presumed, when the record reveals but one other matter from which an appeal would lie,—to wit, an order for a directed verdict for appellee,—that the appeal was from such latter order.

**APPEAL AND ERROR:** Reservation of Grounds—Indirect Rulings of Court. It may not be said that no ruling was made on a certain motion, when the court, though not directly and specifically ruling thereon, did that which essentially amounted to a ruling.

PRINCIPLE APPLIED: A record revealed the following:

1. Defendant made a motion for directed verdict in his favor. No ruling or exception.

2. Plaintiff immediately moved for a like verdict in his favor, and stated the amount due, which was in excess of the amount pleaded.

3. The court stated that plaintiff could amend to correspond with the proof.

4. The next entry was: "The jury returns a verdict in favor of plaintiff for $1,813, under instructions of the court. (Exceptions.)"

Held to constitute a ruling sustaining plaintiff's motion and overruling defendant's.

**APPEAL AND ERROR:** Review—Scope—Appeal from Intermediate Order—Subsequent Errors. When an appeal is confined *solely* to a review of an intermediate order, all assignments of error as to matters occurring subsequent to the making of such order become immaterial.

**APPEAL AND ERROR:** Reservation of Grounds—Exceptions— When Sufficiently Entered. Exceptions to a ruling of the court manifestly cannot be entered until the court has done that which amounts to a ruling.

PRINCIPLE APPLIED: See No. 3.

**APPEAL AND ERROR:** Reservation of Grounds—Exceptions—By Whom Deemed Entered. An exception will be deemed to have been made by, and entered at the instance of, him who alone was adversely affected by the ruling.

**APPEAL AND ERROR:** Review—Scope—Appeal from Intermediate Order—Subsequent Errors.

**PLEADING;** Answer—Defensive Matter—Denial by Law—Insurance. Defensive matter is denied by operation of law.

PRINCIPLE APPLIED: Action on beneficiary certificate of insurance. Defendant pleaded:

1. That a valid change had been made, raising the assessment and scaling the policy.

2. That the insured had legal notice of the change.

3. That the insured is estopped to assail the legality of said change, by reason of having made payments after notice of said change.

4. That insured was notified of an assessment, failed to pay the same, was legally suspended, and had not been reinstated.

*Held,* all denied by operation of law.

**INSURANCE:** Mutual Benefit—Amendments to Constitution— Legality—Burden of Proof. An assessment insurance company, operating under a constitution and by-laws, and pleading non-liability on a policy because of changes made in said constitution after the issuance of said policy, manifestly cannot escape liability without proof on its part that said changes were made *in the manner and form required by its said fundamental law.*

**INSURANCE:**    Mutual Benefit—Amendment to Constitution—Partial Admission of Legality—Effect.    An assessment insurance company, having the burden of proof to show the validity of changes in its constitution, under which changes .it seeks to avoid liability, is not relieved of such burden by an admission by plaintiff that *some* of the steps essential to the validity of said changes have been complied with, *except in so far as such admission fairly concedes compliance.*

**INSURANCE:**    Mutual Benefit—Constitutional Amendment—Notice—Proof.    That notice of a change in the constitution of an assessment insurance company was mailed to an insured, is not sufficiently established by the testimony of an officer which, in its last analysis, is to the effect that he was satisfied that it was so mailed because of the usual course of business of his office.

**INSURANCE:**    Mutual Benefit — Constitution — Illegal Change — Notice—Effect.    An *illegal* change in the constitution of an assessment insurance company is not validated, nor is the insured estopped to assert such invalidity, by the fact that the insured (a) received legal notice of *such* change, or (b) learned of *such* change from outside sources.

**APPEAL AND ERROR:**    Record—Proper Contents—Certificate.    *Documentary matters are not shown to be in evidence* when in no manner mentioned or set forth in a transcript and extension of the shorthand notes, specifically and definitely identified and certified by the reporter and judge to contain all the testimony, documentary or otherwise, offered, introduced, identified, referred to or given upon the trial of said cause, even though such matters follow the said certificate and have attached thereto a certificate of the *clerk* that they are correct copies of the exhibits on file in his office in said cause.

**PLEADING:**    Answer—Defensive Matter—Denial by Law—Insurance.

**INSURANCE:**    Mutual Benefit—Constitutional Amendments—Notice.    Authorities holding that members of mutual insurance companies must themselves take notice of all changes in its constitution, etc., manifestly have no application to cases wherein the insurer and insured have agreed *what alone shall be legal notice of a change.*

**INSURANCE:**    Mutual Benefit—Constitution—Illegal Change—Effect.    Illegal changes in the constitution of a mutual benefit insurance company, under which assessments are increased and the certificate of insurance scaled in amount, work a renunciation of the contract by the company and absolve the insured from the obligations to make or tender payments at the rate existing *before the change.*

INSURANCE:   Mutual Benefit—Constitution—Changes—Failure to Give Notice—Payments—Waiver.  A waiver is a voluntary relinquishment of a *known* right.  Applied in a case where it was claimed that plaintiff, in an action on a mutual benefit certificate, had waived the right to urge that nonpayment of assessments did not work a forfeiture of the certificate.

INSURANCE:   Mutual Benefit—Assessments—Illegal Assessments—Payment—Effect.  A waiver, if any, created by the payment of illegal assessments on a mutual benefit certificate, cannot estop the one paying from refusing to continue to pay the illegal exaction.

PLEADING:   Matters in Avoidance—Securing Benefits of, Without Reply—Estoppel.   Plaintiff may, under some circumstances, *without reply*, obtain the benefit of strict matter in avoidance voluntarily proven by defendant, provided such matter is not matter of pure estoppel.

PRINCIPLE APPLIED:   Action on certificate of mutual insurance.  Defendant, in defense, pleaded the non-payment by plaintiff of a certain assessment.  Plaintiff did not reply, and defendant's said plea of non-payment was thereby denied by operation of law.  Defendant, voluntarily and without objection, introduced evidence establishing the fact that said unpaid assessment was illegal, because of illegal changes made by it (defendant) in its constitution.  *Held*, plaintiff was, in avoidance of defendant's plea of non-payment, entitled to the benefit of the said testimony voluntarily introduced by defendant.

INSURANCE:   Mutual Benefit—Assessments—Payment—Conclusion.  That a member of a mutual benefit insurance company had paid certain assessments is not established by the positive testimony of an officer of the company that such member had made such payments, when it further appears that the witness had no personal knowledge as to the payments, and based his said positive statement on a pure conclusion as to what a certain exhibit showed.

ESTOPPEL:   Equitable Estoppel—Change of Position—Insurance.  Change of position to the detriment of the pleader must be shown, in order to lay the foundation for an estoppel.  So held in an action on a certificate of insurance, wherein it was pleaded that payments of assessments had estopped the member from questioning the legality of changes in the constitution under which the assessments were levied.

INSURANCE:   Mutual Benefit—Assessments—Illegal Assessments—Payment—Estoppel.   Payment of an illegal assessment on a mutual benefit certificate does not, *of itself*, create an estoppel to refuse to pay further like assessments.

**INSURANCE:    Mutual Benefit—Notice and Proof of Death—Waiver.**
23  Notice and proof of death of an insured need not be given when the insurer, from the inception of the claim, repudiates all liability on the certificate.

**LIMITATION OF ACTIONS:    Life Insurance—Accrual of Action.**
24  A right of action on a mutual benefit certificate of insurance, stipulating for the payment of benefits on the death of the insured, accrues on the death of the insured, even though the insurer had, more than five years prior thereto, renounced the contract by his illegal acts.

**INSURANCE:    Mutual Benefit—Action on Policy—Amount of Recov-**
25  **ery—Limitations—Burden of Proof.**    Plaintiff in an action on a mutual benefit certificate, the terms of which appear no further, as to amount payable, than that the beneficiary shall participate in the beneficiary fund to the amount of $2,000 on the death of the insured, is entitled to judgment (if entitled to recover at all) for the full amount of the certificate, *unless defendant establishes that limitations on the contract scale the certificate to a lesser amount.*

*Appeal from Clinton District Court.*—A. J. HOUSE, Judge.

TUESDAY, OCTOBER 17, 1916.

REHEARING DENIED, SATURDAY, JANUARY 13, 1917.

ACTION at law to recover the sum of $2,000 upon a certificate of membership by defendant to Charles V. Cook. Verdict for $1,813 directed for plaintiff. Defendant appeals.— *Affirmed.*

A. J. Schuyler, Jamison, Smith & Hann, and Ring & Hann, for appellant.

F. M. Fort, for appellees.

SALINGER, J.—Responding to what it treated as a challenge of our jurisdiction, appellant amended, setting out a judgment against it, but failed to say when it was entered.

1. APPEAL AND ERROR: decisions reviewable: date of entry of judgment: necessity.

Attack on this silence is made by motion to strike. Rule 19, and Chapter 205, Acts of the Thirty-third General Assembly, require, for an appealable judgment, that it be en-

tered before abstract is filed.   There is no certification, and
we must hold that no final judgment is here for review.  But

2. APPEAL AND ER-
ROR: notice of
appeal: indefi-
nite notice:
presumption.

here the absence of final judgment becomes
material only on the further attack that a
notice of appeal is too indefinite which does
not say in terms from what appeal is taken.
While we cannot here apply the rule that, presumptively, ap-
peal is taken from final judgment, we can and should pre-
sume that it was taken from the order directing a verdict for
appellee.   *Clark v. Van Loon*, 108 Iowa 250.

But appellee meets this by saying that we cannot pre-
sume that the notice was from the order directing verdict for
the plaintiff, because the record fails to show that such an

3. APPEAL AND ER-
ROR: reservation
of grounds: in-
direct rulings
of court.

order was made.   It is not disputed that de-
fendant moved for a directed verdict, and
that plaintiff moved for one in her favor.
But appellee asserts that the record fails to
show that either motion was ruled on.   We have gone through
a cloud of denials, amendments, motions, and finally a tran-
script, and find the record to be this:   Defendant moved for
a directed verdict in its favor.   No ruling nor exception ap-
pears, immediately following the end of this motion.   It is
instead followed immediately by the motion of plaintiff.   In
connection with it, counsel for plaintiff made a statement
that the verdict should be for $1,813.   Immediately follow-
ing this statement by counsel, the record exhibits this:

"By the court:   The plaintiff have leave to amend their
petition as to the interest on the amount claimed, to corre-
spond with the proof"—which would make it $1,813.

"The jury returns a verdict in favor of plaintiffs in the
amount of $1,813, under instructions of the court.   Excep-
tions."

We cannot agree that there was a failure to rule.   The
plaintiff asserted that $1,813 was what was due her.   The
court permitted amendment justifying that recovery.   The
jury returned a verdict for plaintiff in just that amount, and

did so under instructions of the court. It is, therefore, manifest that the record shows that the court instructed that such a verdict should be returned. The court entered judgment upon that verdict. It would be utter straining to say that this does not amount to overruling the motion of defendant, and sustaining that of plaintiff. On this record, it is no strained construction to hold that the notice of appeal is sufficiently definite. The record exhibits but one thing from which an appeal will lie, to wit: the order directing a verdict against the defendant. The notice of appeal must be held to refer to that order. It follows that the appeal must be entertained, but be limited to the review of that one order.

### 3.

This disposes of a number of contentions as to whether a motion to set aside a verdict is the equivalent of a motion for new trial; and on whether the motion to set aside was filed in time; and whether assignments complaining of the overruling of the motion to set aside are sufficiently specific under the rule. This is 'so because the order sustaining motion for directed verdict in favor of plaintiff is reviewable here, though no motion to set aside judgment or for new trial was filed. *Checkrower Co. v. Bradley,* 105 Iowa 537, at 547.

4. APPEAL AND ERROR: review: scope: appeal from intermediate order: subsequent errors.

II. If exceptions were taken, they were timely. To be sure, no exception was interposed after defendant finished making its motion. But the first motion was immediately followed by one for the plaintiff, and the court, no doubt, waited before ruling on either until it passed on both. At any rate, no ruling was made on the defendant's motion. at the instant when same was presented, and consequently there could not be an exception to the ruling, then. It could not be excepted to until it existed. Now, the instant

5. APPEAL AND ERROR: reservation of grounds: exceptions: when sufficiently entered.

that the motion for the plaintiff was presented, the court, as

**6. APPEAL AND ER-ROR: reservation of grounds: exceptions: by whom deemed entered.**  we have seen, ruled on both motions, and what we construe to be such ruling is followed by the word "Exceptions." It is manifest that this is intended to recite that someone was taking exceptions to the return of the instructed verdict, and to the proceedings leading thereto and immediately preceding the return. No one but defendant could have taken them. The motion adverse to plaintiff had been denied. Her motion for verdict had been sustained for every penny she claimed, and a directed verdict for that amount returned in her favor. Even as this gave plaintiff all she asked, it denied every position taken by defendant. It is no strained reasoning to hold that it is the defendant who took the exceptions, and that they relate to what was done with reference to an instructed verdict against defendant.

III. It is not a material inquiry whether the judgment entered was duly excepted to. The point has been disposed of so effectually by our holding that we shall proceed as

**7. APPEAL AND ER-ROR: review: scope: appeal from intermediate order: subsequent errors.**  though there were no final judgment. Even if there were one, it would be merely the formal giving effect of the order directing a verdict. It would be sufficient that said order was duly excepted to, even though the judgment based upon it as matter of course was not excepted to. *Haefer v. Mullison,* 90 Iowa 372; *Clement v. Drybread,* 108 Iowa 701. *Gillespie v. Ashford,* 125 Iowa 729, at 740, does not run counter to these.

### DIVISION II.

I. On May 22, 1907, defendant, at its regular annual meeting, changed its constitution so that it raised the monthly assessment, theretofore exacted from the assured, from $4.00

**8. PLEADING: answer: defensive matter: denial by law: insurance.**  to $4.60 a month, and made another change which, in effect, scaled the face of the certificate. It seems to be conceded that since then, defendant has enforced this constitu-

tion as changed, except that the assessment for June, 1907, was made and collected in accordance with the schedule as it was before the change. Defendant answers that it adopted amendments and revisions of its constitution and by-laws and its schedule of rates effectuating said changes in pursuance of the authority then vested in it "under the articles of in-corporation, constitution and by-laws of said order;" that all the above and foregoing changes and amendments to the constitution and by-laws were made in pursuance of resolutions regularly adopted according to the provision of the constitution of the order, and in accordance with the authority conferred upon the Grand Lodge; and that the changes were made by the Grand Lodge "by proper resolutions, duly and regularly adopted, as provided in Sec. 6 and 6½ of its amended constitution and by-laws, to which reference is made, and the same hereby made a part of this division of the answer."

In essence, the affirmative defense is that a valid change was made raising the assessment of Cook; that he had legal notice of the change; that he is estopped to assail the legality of the change because, after he was advised of it, he paid the assessment exacted by it, and, finally, having been duly noti-fied of the assessment for September, 1907, he failed to pay the same; that thereby and therefore he was legally sus-pended; and that he was never reinstated. The essential counter-position is that the change was illegal; that there was no legal notice of it,—no evidence of the acts relied upon for acquiescence, waiver and estoppel; that the illegal acts of the defendant operated as a renunciation and breach of the contract which absolved assured from paying the unlaw-fully increased assessment; and that, in view of the attitude of the defendant in insisting upon enforcing the illegal change, it would have been idle to have paid or tendered payment at the old rate. There was no reply, but these de-fenses are all denied by operation of law, and defendant has the burden.

An investigation of whether defendant has established that the change in question was lawfully made, will necessarily settle much of the controversy exhibited in the appeal.

II.   In its amendment to abstract, appellant sets out that its constitution provides:

"First.   The Grand Lodge may enact, alter or amend such by-laws as do not conflict with the constitution, provided that they shall be proposed in writing at a stated session of the Grand Lodge, and that two thirds of the representatives vote in favor thereof.   Second.   The constitution cannot be altered or amended unless such alterations or amendments shall be made in writing at a regular session, signed by three representatives; the question shall be taken on their adoption, and if approved by two-thirds vote of all the representatives present and entitled to a vote, it shall become a part of the constitution."

9. INSURANCE: amendments to constitution: legality: burden of proof.

It may be assumed that the constitution was changed to provide for a higher rate of assessment, and for a lien that operated to scale the face of the certificate.   But there is not a scintilla of evidence either that said requirement was complied with literally, substantially, or at all, or what the articles of incorporation are or authorize.

In the second amendment to petition, the plaintiff makes a rather ambiguous statement.   It is this:

"And said defendant then claimed, and now claims, that it had the right and authority to make said changes, and so amend said constitution.   That said changes were by written resolutions made and adopted by said Grand Lodge at its said regular meeting in May, 1907."

10. INSURANCE: amendment to constitution: partial admission of legality.

The ambiguity is whether this is an admission that the changes were made by a written resolution, or a statement that defendant claims this was done.   We incline to think the latter is the fair construction of the whole paragraph. But if that be not so, it is still no more than an admission

that the changes were by written resolution, and were adopted at a regular meeting. This does not discharge the burden as to legal adoption, because more than what is admitted on that construction is required to make a legal change in the constitution.

III. If that be passed, the next question is whether lawful notice of the changes was given. This in turn involves whether a notice was lawfully served, and what it contained.

11. INSURANCE: constitutional amendment: notice: proof.

Defendant pleads that, by its laws, a publication called "The Herald" was the sole medium for official notice to its membership of any action taken by its grand lodge, and of assessments required to be paid; and that, under said laws, the notice was complete when said paper was put in the post office at Cedar Rapids, Iowa, properly addressed (Baldwin, Iowa), postage prepaid; that No. 6 of Vol. 20 of the Herald, published in June, 1907, did contain a notification of the change aforesaid, and that it was mailed to plaintiff by depositing the same in said post office, properly addressed to him at Baldwin, Iowa, his last known address, postage prepaid, and that Cook received the same in the due course of the mails. Is this allegation proven? On this point we have this: The secretary of defendant testified that a copy of the Herald of said date was mailed to Cook between June 1 and June 5, 1907, and was mailed postage prepaid. He was then asked whether he personally mailed this copy to Cook, and he answered:

"I know it was mailed; I seen that it was mailed; I did not put it in the post office myself nor go with them and see them put it in; did not see them put it in at the post office. Q. You cannot swear positively that that paper you have testified to, a copy of the Herald, was put in the post office and addressed to Mr. Cook? A. I can, just as positively as anything else we mail. I saw it put on the mailing list which was made up in the office by my men in the office and I stand and look at them do it. They had his name on the

list as one of the persons to whom the Herald was to be mailed.  Q.  After that mailing list was made up, you did not see this paper put in the post office?  A. No, sir, I didn't. Nor saw it put into any post office or receptacle for United States mail.  I have no personal knowledge that that paper was mailed.  He got the others, and my conclusion is he must have got this with them, but I don't know of my own personal knowledge that this particular paper, or a paper of this date, was put in the post office, only by following the paper.''

If for no other reason, there is a failure to prove proper mailing because there is no evidence of what post office the paper was addressed to.

## 2.

Some reliance is placed upon a letter claimed to have been addressed to Cook, not at Baldwin, but at Monmouth, Iowa.  Baldwin, and not Monmouth, is the required address. There is nothing to show who sent this letter set out in the pleadings, except a statement in abstract that ''there was sent to him on October 22, 1907, a letter, a copy of which is as follows.''  The letter is not signed; there is no indication whom it is from; and moreover we are unable to find any evidence that it ever existed.

## 3.

Defendant argues that, since the plaintiffs seek to excuse a nonpayment of the assessment for September, 1907, on the ground that these changes operated as a renunciation of the contract, therefore assured must have had notice that the changes were made, and that they are, at all events, estopped to assert that the changes were not lawfully made.  That hardly follows, and is not controlling if it does.  The change is legal only if it be in fact lawfully made, and a required notice

12. INSURANCE: constitution: illegal change: notice: effect.

thereof given. If, though there be no legal notice of it given, the beneficiary learns that there has been an unlawful change, he may assert that it is in fact illegal, and, as an additional reason why it is illegal, that no lawful notice of it was ever given. To take this position would neither make the unlawful act lawful, dispense with lawful notice, nor work an estoppel to assert illegality in adoption, plus want of lawful notice.

IV. If that be passed, while the so-called official paper, The Herald, was put in evidence under an agreement that it might be thus put in for the sole purpose of showing that it contained a notice of assessment, there is no competent evidence of its contents. In its additional abstract, defendant says that Exhibit 3 is said copy of the Herald; that it contains all the changes made that are germane to this controversy; that it was attached to and made part of answer and amendments thereto; and that the identification of the exhibits attached to the pleadings as copies of the original papers entitles them to be considered as part of the evidence in this case. Let that all be granted, and it still became necessary to exhibit to us in some competent way, not only that the copy of the Herald was in evidence, but what its contents were. It is not set out in the abstract. That it contains any given thing beyond a notice of some assessment, is nowhere conceded. This turns us to the transcript. We find that there the reporter certifies that the transcript and extension of the shorthand record and notes taken on the trial are "contained in the foregoing 25 pages;" that these 25 foregoing pages "contain all of the testimony offered, introduced or given upon the trial of said cause;" and that "all documentary evidence offered, introduced or given is therein (the foregoing 25 pages) referred to, identified and included." Following this is a certificate of reporter and judge, which again confines itself to what is contained in "the above and foregoing." The 25 pages preceding these certifi-

13. APPEAL AND ERROR: record: proper contents: certificate.

cates have nothing to say as to said publication. *Following*
these certificates is attached a copy of Herald, No. 6, Vol. 20,.
of June, 1907.   And following it is a certificate of the clerk
of the district court that he has compared "the foregoing
and annexed copy of Exhibit 3. (which this copy of the Her-
ald is marked), with the original record thereof now remain-
ing in my office, and have found the same to be a correct
transcript therefrom, and the whole of such original record."

It is apparent that the transcript proper and its certifi-
cations do not advise us that this copy of the Herald was put
in evidence, nor of its contents; and that all we have is a
statement of the clerk that the paper attached, which is not,
certified to by judge and reporter, is a correct copy of Ex-
hibit 3, on file in this cause in his office.

V.   Defendant pleaded that there was an application
which was the basis of Cook's being received as a member,
and of issuing the certificate, and that it bound Cook, as a
condition to his right to participate in the benefit fund, to
compliance on his part with all the laws, regulations and
requirements which are or may be enacted by the order.   It
is urged that this application estops the plaintiffs to ques-
tion the power and authority of the Grand Lodge to adopt
a schedule of rates in 1907, or to make the other alterations
that were then made.   As an alternative proposition, it is
said that the constitution, by-laws and the terms of the appli-
cation made it the duty of Cook to obey and comply with all
laws, etc., then in force, and such as might thereafter be
adopted.

Before entering upon the claim as to what the applica-
tion alleged to have been signed by Cook bound him to with
reference to future changes, we have the question whether
there is competent evidence of what the covenant of the appli-
cation in said respect was.   We find that the application is
preserved and certified to precisely as is the copy of the
official paper.   It follows that we can give the application

no effect, because we do not have competent evidence of its contents.

VI. It is alleged that plaintiff failed to pay the September assessment in 1907, "as required by the rules, regulations and constitution and by-laws of the order," and that his certificate was, on the 27th day of September, 1907, annulled, "as provided by the constitution and by-laws of the order," for failure to pay said assessment for said month of September. Further, that:

14. PLEADING: answer: defensive matter: denial by law: insurance.

"Having failed to pay the September assessment in 1907, as required by the rules, regulations and constitution and by-laws of the order, his certificate was, on the 27th day of September, 1907, annulled, as provided by the constitution and by-laws of the order, for failure to pay said assessment for said month of September."

In the motion to direct verdict for defendant, it is presented that the plaintiff is not entitled to recover because it appears from the record and the evidence that Cook failed to pay the assessment for the month of September, 1907, and was, on the 28th of September, 1907, suspended, and not thereafter reinstated. It is conceded that no payments were made after August, 1907. But we find no evidence that Cook was ever suspended, or, if suspended, that he was not reinstated. Nor is there evidence that the regulations in question were ever lawfully adopted. We find no notice of this assessment except such as said copy of the Herald may constitute. There is a concession that same contained a notice of *some* assessment. Since it was a publication in June, 1907, it would be strained to assume that it contained a notice of assessment for September, 1907. And it has been seen that there was no evidence that the paper was mailed, as required by the laws of the society.

2.

We are not unmindful of holdings like *Norton v. Catholic Order of Foresters,* 138 Iowa 464, and *Elliott v. Home*

*Mut. Hail Assn.,* 160 Iowa 105, that members of a mutual

15. INSURANCE: constitutional amendments: notice.

insurance society are bound to take notice of and be governed by its laws, whether adopted prior or subsequent to the contract, if the contract makes such by-laws a part thereof; but have to say: (1) That, if here there be such contract, it is in the application, and we do not have the application; (2) notwithstanding this general rule, it is competent for the parties to the contract to stipulate what alone shall be legal notice of a change, and in this case this was done.  See *Smith v. Supreme Council,* 88 N. Y. Supp. 44, 45, 46.

If the change in law which raised the assessment of Cook and scaled his certificate was not legally adopted, and legal notice thereof was not given, plaintiff was under no obliga-

16. INSURANCE: constitution: illegal change: effect.

tion to make or tender payment at the rate existing before the change.  On renunciation there arose a right to elect whether to hold the insurer for damages, or wait until the policy became payable according to its tenor and surviving the beneficiary. *Clemmitt v. New York Life Ins. Co.,* 76 Va. 355 (77 Va. 366).

Where the insurer refuses one payment, claiming a policy is forfeited, there is no forfeiture for failure to tender payment of the premium thereafter.  *Guetzkow v. Michigan Mut. L. Ins. Co.* (Wis.), 81 N. W. 652; and see *Pilgrims' H. & L. Ins. Co. v. Scott* (Ga.), 78 S. E. 469.

Where the association attempts to expel a member and the proceedings are void for irregularity, and there is a subsequent refusal to pay dues, the failure of insured to continue to tender dues cannot prejudice his rights.  *Langnecker v. Trustees of Grand Lodge A. O. U. W.* (Wis.), 87 N. W. 293.

Where the assessment is irregular and void, the insured is not required to make tender.  He can only be required to pay legal assessments.  He is not required to obtain data upon which to figure out correctly what would be the proper amount to pay or tender, or take chances on his tender's be-

ing sufficient, if rejected, to preserve his rights. *Benjamin v. Mutual Reserve Fund* (Cal.), 79 Pac. 517, at 522; and see *Supreme Council v. Black*, 123 Fed. 650.

We held, in *Underwood v. Iowa Legion of Honor*, 66 Iowa 134, that, where plaintiff was entitled to recover unless there was a forfeiture of membership by neglecting to pay an assessment, where the pretended assessment was not made in accordance with the provisions of the constitution of the order, there was no forfeiture of membership by neglecting to pay it.

We think that *Fort v. Iowa Legion of Honor*, 146 Iowa 183, at page 184, point 6, holds that, where there is a repudiation, there need be no further assessment tendered under the old rate.

### 3.

Something is said that, since the plaintiff asserts that the constitution was illegally changed, assured must have gotten the knowledge through the receipt of the Herald; that, if he refused because of the changes, he knew of them. And, on the other hand, if he did not know of the changes, then his failure to pay the September assessment was not induced by the change, and was a voluntary refusal to pay when he had the election either to pay or not to pay.

Next, it is argued that, if the act of reducing the certificate was illegal, and the act of increasing the assessment was valid, assured should have paid the increased assessment to keep his certificate in force, and to avoid forfeiture for nonpayment; that appellant does not understand appellee to base himself on the increase in assessment (because he ratified that), but that his claim of renunciation is based on the theory that the face of the policy was reduced; and that, if this is his contention, it follows that it was his duty to pay the assessment at the increased rate. Among other faults, this is an assumption which unduly limits the claim made by the appellees. They seem to rely upon both changes.

It is also faultily assumed that, if the insured knew of the changes, he could have received the knowledge in no other way than through the receipt of the Herald.

There are varied claims that plaintiffs are estopped and have waived the right to urge that nonpayment did not work a forfeiture.   It has been seen there was no notice of either change or assessment.   Waivers rest on knowledge of the right which it is claimed was waived.   A waiver is a voluntary relinquishment of a known right, and before it will be enforced, it must clearly appear that the party against whom it is sought to be enforced was in possession of all material facts affecting it.   *Norton v. Catholic Order of Foresters*, 138 Iowa 464.   No one can acquiesce in a wrong while ignorant that it has been committed, and that the effect of his action will be to confirm it.   29 Am. & Eng. Encyc. of Law 1093.   Here, there is no competent evidence of notice. The notice which will base a waiver or estoppel should not be inferential.   *Baker v. Ft. Worth Board of Trade* (Tex.), 28 S. W. 403; *Rosenstein v. Court of Honor* (Minn.), 142 N. W. 331; *Jewell v. Nuhn*, 173 Iowa 112.

17. INSURANCE: constitution: changes: failure to give notice: payments: waiver.

The argument that the changes were ratified by payment of assessments demanded under the change, and that, therefore, the changes did not excuse the nonpayment of the September assessment, has force only if there be evidence that such payments were made, and made with knowledge of the payer's rights— and it will be inquired into elsewhere whether such payments are shown.   And if it were true that payments were made which could not legally be exacted, the waiver thus created, if any, cannot operate to estop one from refusing to continue to pay the illegal exaction.

18. INSURANCE: assessments: illegal assessments: payment: effect.

4.

It is said that nonpayment was alleged and there was no reply; and that, therefore, while there was a denial of the

allegation that there was no payment, there was no plea of matter in avoidance or excuse; and that appellee may not be heard to say that the nonpayment is excused because defendant repudiated and renounced the contract. It will be found that all the evidence which tends to show renunciation was put in by defendant, and without objection. Therefore, it made a volunteer issue on that question. We do not recede from the exceptional rule that pure matter in estoppel cannot be taken advantage of without proper plea, even though evidence of estoppel be admitted without objection. But we are not willing to extend this, but hold that, where a party itself injects evidence into the record, which, as distinct from pure estoppel, constitutes or may constitute mere matter of excuse or avoidance, the party which injected this may not say to the other that he may not use this evidence because he did not plead excuse or avoidance.

19. PLEADING: matters in avoidance: securing benefits of, without reply: estoppel.

VII. Defendant pleaded waiver and estoppel because the assessments for June, July and August were paid with full knowledge of the change, and has the burden of proving that there was such payment, and that it constituted a waiver and estoppel.

20. INSURANCE: assessments: payment: conclusion.

It is true that the secretary of defendant testified that he knew whether or not Cook had paid for the months of June, July and August, 1907, and that he did pay for these months. But it appears very clearly that this positive statement is a pure conclusion from what the witness conceives a paper designated Exhibit 2 to show, and that there is no statement, and there could not well be, that this witness knew of his personal knowledge what payments Cook had made to the subordinate lodge. The witness says that Exhibit 2 is the report made to him as grand secretary by the secretary of the Baldwin subordinate lodge; that he knows the secretary, and the paper contains what seems to be the signature of the secretary. All attempts to show what the exhibit contained as to members' remitting or paying,

and as to reports of payment made to the witness, were defeated on objections.   The Exhibit 2 itself lacks proper certification, exactly as does the copy of the Herald.   It seems, therefore, that the basis of this estoppel, the fact that such payments were made at all, is wanting.

Another element is lacking.   There is no proof that the alleged payments induced any change of position on part of defendant.   As to this, as on the claim that the change in constitution was reasonable, there are assertions which, if true, would work an estoppel; for instance, the impoverishment of the society in the one, and its conduct in taking on new obligations in the other.   But there is no evidence of either.   Still another element of estoppel—knowledge of rights—is absent.

**21. ESTOPPEL: equitable estoppel: change of position: insurance.**

Again, payment of one illegal exaction does not, of itself, create an estoppel to refuse further illegal exactions.   Otherwise, the wrongdoer would profit by his own wrong, coupled with the fact that his wrongful demands were acceded to.

**22. INSURANCE: assessments: illegal assessments: payment: estoppel.**

"The fact that one party has been making illegal demands on another, and that the latter has heretofore complied with them, imposes no legal duty upon him to continue to comply with them." *Schultz v. Citizens' Mut. L. Ins. Co.* (Minn.), 61 N. W. 331, at 333.

The simple fact that assured had paid mortuary assessments higher than he was bound to under his certificate in a life insurance company, in the absence of any showing of fraud, or that anyone had been misled by his conduct, did not estop him from contesting subsequently assessments greater than he was bound to pay.   *Covenant Mut. L. Assn. v. Kentner* (Ill.), 58 N. E. 966.

That a member of a mutual fire insurance company paid prior assessments, invalid because an amendment to create a fund for payment of future losses was included therein, does not estop him from denying the validity of subsequent similar

assessments.    *Farmers' M. F. Ins. Co. v. Knight* (Ill.), 44 N. E. 834.

In *Smith v. Supreme Council*, 88 N. Y. Supp. 44, it was attempted to make ratification of scaling a certificate by showing a payment thereafter of a reduced assessment, and it was held that this was not to be done, without proof of how notice of change in by-law was to be given, or that, if there was provision, that it had been complied with; and that, in the absence of proof of knowledge on the part of the member that the reduction in the assessment was solely occasioned by the reduction in the indemnity provided by the certificate, the assured had no notice of the change in the law, and his contract rights could not be arbitrarily changed and defeated upon the theory of acquiescence, ratification or estoppel.

VIII. The motions to direct are so intimately related as that what we have done with the claim that it was error to direct for plaintiff disposes of much of the claim that it

23. INSURANCE: notice and proof of death: waiver.

was error to refuse a direction for defendant. But some points remain undisposed of. The secretary of defendant testified that there was no proof of death or notice of death given defendant. He was asked whether there was any change in the by-laws in reference to proof of death, and, if so, in what years. He answered, "in 1907," and that Sec. 6 on pages 10 and 11 shows; and that the by-laws on said pages were not in force in September, 1912; but that the law in force at the time of death was the same as the law of 1912; that he was not notified of the death of Cook, officially, but received a letter stating he was dead, written by the attorney for plaintiff before suit was begun; that he does not remember as to claiming a certain amount; that he thought there was no use paying any attention to it because Cook had been suspended, and the letter was answered, saying he was suspended, and that he knew it. Waiving whether the record presents this point for consideration, there was certainly no requirement that a useless formality be gone through with—a formality, since liability

was denied on the claim of suspension.   Where an insurer denies liability on the ground that the policy was delinquent, it cannot, upon suit by the insured, deny liability on the ground of delay in making proof of loss and giving notice. *Elliott v. Home Mut. Hail Assn.*, 160 Iowa 105.

IX.   Appellant says that the claim under the certificate is barred by the statute of limitation because, after the amendment and change in 1901 and 1907, more than five years had elapsed, wherefore, any claim under the certificate, or any right to enforce it, are fully barred; that more than five years have elapsed between the time of the last payment and the suspension of the member and the commencement of this suit; that more than five years have elapsed from the time of Cook's suspension or failure to pay dues and assessments. It is agreed to be uncontroverted, if not admitted, that the last assessment was paid in August, 1907; that the excuse pleaded for not paying further is that the act of Grand Lodge in May, 1907, was a renunciation and breach of contract; and that, therefore, the cause of action is barred because it was more than five years from the alleged breach of contract, on May 22, 1907, to the death of the insured, which occurred on September 21, 1912.   We think this is a misconception of premises.   This is a suit on the written contract—the certificate issued.   In no event could any right of action accrue on the certificate until Cook died.   The suit was begun within less than five years after Cook's death.   Therefore, the claim is not barred by the general statute of limitations.

24. LIMITATION OF ACTIONS: life insurance: accrual of action.

X.   The petition alleges that there was issued a certificate that assured was entitled "to participate in the beneficiary fund to the amount of $2,000, which sum was, at his death, to be paid to his wife," and that copy of said certificate is attached as Exhibit "A." It is not set out either in abstract or transcript.   The answer admits this allegation. The record shows nothing concerning it except that Exhibit

25. INSURANCE: action on policy: amount of recovery: limitations: burden of proof.

"A" was put in evidence, without objection. Appellant concedes that, if the beneficiary certificate stood alone, there would be a contract agreeing to pay the beneficiary the sum of $2,000. But it says this must be taken in connection with all the other terms of the contract, and therefrom it will appear that the promise was conditional upon defendant's membership's reaching 2,000; that Section 18 of Article 8, Constitution and By-Laws of 1881, provides that "the amount to be paid on any beneficiary certificate shall in no case exceed an average of $1.00 per capita of the membership at the date of the death;" that the only promise made was to pay the beneficiary a sum named, not to exceed $1.00 per capita from the members in good standing at the time of death, and that the sum should not, in any event, exceed $2,000; that, if entitled to recover at all, plaintiff was not entitled to recover the amount of the verdict, and could recover only the amount provided for by the constitution and by-laws; that it cannot be determined from the evidence how much was due under the contract, as a whole; that there is neither allegation nor proof that the membership, at the time of the issuance, or at the time of the death, or at any other time, had ever reached 2,000; that plaintiff failed to show that the certificate had any value before the changes and alterations in the constitution and by-laws; that there is no showing whether the amendments complained of were a benefit or a detriment; that the burden was on plaintiff to allege and prove a breach of the contract before being entitled to recover; that, on plaintiff's theory, the value of the certificate should have been determined either by the constitution and by-laws of 1880 and 1881, the revision of the constitution and by-laws of 1901, or the revision of 1905; that, if the value is to be determined by the constitution and by-laws of 1880 and 1881, there is no evidence from which to determine the fact; and that, if the value is to be determined from the constitution of 1905, then, on the alleged breach of the contract, the certificate was worth $1,290; and at the time of the

death, after deducting the amount of the excess that should have been paid, the certificate was worth $1,290, for which reason there is absolutely no evidence upon which to base the verdict as directed by the court.   One trouble with this is that there is no evidence that there is any valid law of defendants which puts these limitations upon the admitted wording of the certificate.   Another is that the additional abstract shows that these limitations are found in Section 1, Article VII, Constitution and By-laws, 1880, 1881, and Section 18, Article VIII, same, and neither was offered in evidence.

*Makely v. Supreme Council Legion of Honor* (N. C.), 45 S. E. 649, holds that a mutual benefit insurance association cannot amend its by-laws so as to reduce the amount of a certificate without the insured's consent, and the fact that its promise is only to pay an indefinite sum not exceeding the amount named in the certificate is immaterial.   *Covenant Mut. L. Assn. v. Kentner* (Ill.), 58 N. E. 966, holds that where, in an action against an assessment life insurance company on a certificate by which it agreed to pay the proceeds of an assessment, not to exceed $5,000, there was no evidence as to what an assessment would provide, plaintiff was entitled to recover a judgment for the full amount of the certificate; the fact that an assessment would have produced less than the face of the certificate, if true, being a matter of defense.   So does *Covenant Mut. Life Assn. v. Kentner* (Ill.), 58 N. E., at 969.   These dispose of this assignment.

The judgment is—*Affirmed.*.

GAYNOR, C. J., LADD and EVANS, JJ., concur.