STATE OF IOWA, Appellant, v. W. G. McDOUGAL, Appellee.

CRIMINAL LAW: Verdict of Acquittal—Presumption. Upon the ren-
1  dition of a verdict by the jury in a criminal case on the order of
the court, it will be presumed that the court forthwith entered a
judgment of acquittal. But such verdict is final, even though no
formal, final judgment be entered.

APPEAL AND ERROR: Want of Jurisdiction—Exclusiveness of Pro-
2  cedure. The statutory procedure for establishing the want of juris-
diction in the appellate court to entertain an appeal is exclusive
of all other procedure. So held where, on appeal by the State in a
criminal cause, it was suggested *in the argument* that the court had
no jurisdiction because of the failure to enter a final júdgment.

APPEAL AND ERROR: Argument—Belated Filing. A belatedly filed
3  argument may, in the discretion of the court, be given consider-
ation.

CORPORATIONS: Officers—False Statement Inflating Stock Value.
4  An allegation in an indictment that a numerously itemized state-
ment of the financial resources of a corporation was feloniously
false in the *one* item as to "the percentage cost of selling the cor-
porate shares of stock," may be supported by any *relevant* testi-
mony tending to show such alleged falsity, even though it be testi-
mony of the falsity of *other* items of said statement, which the
indictment does not allege to be false.

INDICTMENT AND INFORMATION: Issues, Proof, and Variance—
5  Disjunctive Allegation. An indictment for issuing a feloniously
false statement of the resources of a corporation, with intent
thereby to falsely inflate stock values, may be predicated on the
falseness of *any one or all* of the multitudinous items of the state-
ment; but the State need not prove the falseness of *every* alleged
false item, in order to sustain a conviction.

CORPORATIONS: Officers—Feloniously False Statements. A feloni-
6  ously false statement of the cost of selling corporate shares of
stock, made for the purpose of falsely inflating the value of such
stock, is within the prohibitions of Sec. 1641-g, Code Supp., 1913.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

MARCH 7, 1922.

THE trial court excluded certain evidence offered by the State, and then sustained defendant's motion to direct a verdict of acquittal. The State appeals.—*Reversed.*

*Ben J. Gibson,* Attorney General, *B. J. Powers,* Assistant Attorney General, and *A. G. Rippey,* for appellant.

*Charles S. Bradshaw* and *Casper Schenk,* for appellee.

PRESTON, J.—1. At the outset, appellee raises the question that this court has no jurisdiction to entertain the appeal, for the reason that no final judgment was entered against the State.

1. CRIMINAL LAW: verdict of acquittal: presumption.

The record does not show a final judgment against the State for costs. But, as said, the court sustained defendant's motion for a directed verdict of acquittal, and directed the jury to return such a verdict, and such verdict was signed and returned to the court, as directed. This was final as to the defendant. The statute, Section 5430, Code, 1897, provides that, under such circumstances, the court must render judgment of acquittal immediately. There was nothing else for the court to do, upon sustaining the motion, but to enter judgment or direct it to be done. It may be that we should indulge the presumption that the trial court did its duty. Under the statute cited later in the opinion, we think there is such a presumption. It would have been a simple matter to have entered judgment. On the other hand, it would have been a simple matter for appellant to state the fact in the abstract, if it is a fact, that the judgment was entered, or perhaps to have asked the court to enter the judgment, if it was not done. No criticism is intended; and yet these small matters in 500 or 600 cases a year, which are argued at some length, sometimes make unnecessary labor for the court, and counsel as well. The court had authority to rule on defendant's motion. The ruling ended the case, so far as the defendant is concerned, even though no formal judgment of acquittal was entered. We assume that defendant would not contend otherwise. The only other judgment which could have been rendered would have been against the State for costs. We suppose no execution could issue against the State to make such

a judgment. We do not understand that costs in criminal cases are paid in that method. It has been held that costs, in one sense, are not a part of the judgment, and no appeal would lie from such a judgment unless some matter in reference thereto has been passed upon by the trial court. *Fisher v. Burlington, C. R. & N. R. Co.*, 104 Iowa 588, 590; *Young v. Rutherford*, 190 Iowa 414. We have held that the ruling on a motion to direct a verdict is appealable, and in some cases, if necessary, the appeal will be considered as taken from an order directing a verdict, where the record fails to show that any judgment was rendered. *Clark v. Van Loon*, 108 Iowa 250; *Gibson v. Iowa Legion of Honor*, 178 Iowa 1156, 1179. The notice of appeal in the instant case recites that notice of appeal was duly given, in the manner and within the time specified by statute, and service made and return thereof filed, as provided by law. It does not recite whether the appeal is from a final judgment or from the ruling on the motion for verdict. No complaint is made as to the form of the statement in the abstract in this matter.

But aside from all these matters, the statute, Section 4139, Code Supplement, 1913, provides that:

"All objections to the jurisdiction of the court to entertain an appeal must be made in printed form, stating specifically the ground thereof, and served upon the appellant, or his attorney of record, not less than ten days before the date assigned for the submission of the cause."

2. Appeal and Error: want of jurisdiction: exclusiveness of procedure.

We do not understand appellee to claim that this provision of the statute was complied with. The rules of procedure in civil cases are to be followed in appeals in criminal cases, at least so far as applicable. Section 5461, Code, 1897. We have held, under Section 4139, that the presumption is in favor of the jurisdiction, unless appellee specifically demonstrates that the court is without jurisdiction, and in the manner pointed out by the statute; that mere paucity of the recitals in the abstract is no longer of consequence; that, in the absence of objections, and in the manner pointed out by the statute, we indulge the presumption that the record presents nothing but that which we have power to review. *Sawyer v. Iowa Const. Pro. Amend. Assn.*, 177 Iowa 218; *Franke v. Kel-*

*sheimer*, 180 Iowa 251, 262.  We think that appellee's objection as to this feature of the case is not well taken.

2.  Appellee further contends that appellant's argument should have been filed September 20, 1921.  There was a delay of a few days, and it was not served upon appellee until Octo-

**3. APPEAL AND ERROR: argument: belated filing.** ber 10th.  Appellee filed a motion to affirm, or rather that the case should be submitted as of the date of appellant's default; and the question is now presented in the briefs.  Appellee states that it had the option to have the case submitted upon the record then on file, but concedes that such option is subject to the discretion of the court.  It is claimed by appellee that the appeal was regularly set to be heard on October 20, 1921, but it was not heard and submitted until February, 1922, and the case is fully argued by both parties.  This being so, and defendant having been acquitted, we are unable to see that any prejudice has resulted to him.  The abstract does not show the reason for the postponement to February.  With so many cases before the court, it would, of course, be the better practice and cause less confusion if the rules were observed, and filings made in accordance therewith.  We realize that this is not always practicable.  However, it is a matter within the discretion of the court whether arguments will be considered, even though not filed in time.  Ordinarily we do not refuse to permit a hearing, where no prejudice appears.  *Buehner v. Creamery Pkg. Mfg. Co.*, 124 Iowa 445; *Baker v. Oughton*, 130 Iowa 35; *Wood v. Hall*, 138 Iowa 308; *Moore v. Crandall*, 146 Iowa 25; *Flickinger v. Farmers' M. F. & L. Ins. Assn.*, 136 Iowa 258.

3.  Coming now to the merits of the appeal.  The errors complained of relate to the rulings of the trial court excluding certain evidence offered by the State.  The defendant was in-

**4. CORPORATIONS: officers: false statement inflating stock value.** dicted under Section 1641-g, Code Supplement, 1913, relating to false statements by corporate officers, intended to affect the market value of corporate shares, which provides:

"Every director, officer, or agent of any corporation or joint-stock association, who knowingly concurs in making, publishing, or posting, either generally or privately, to the stockholders or other persons, any written report, exhibit, or state-

ment of its affairs or pecuniary condition, or book or notice containing any material statement which is false, or any untrue or willfully or fraudulently exaggerated report, prospectus, account, statement of operations, values, business, profits, expenditures, or prospects, or any other paper or document intended to produce or give, or having a tendency to produce or give, the shares of stock in such corporation a greater value or a less apparent or market value than they really possess, is guilty of a felony, and upon conviction thereof shall be punished * * *"

On October 22, 1919, the defendant was treasurer and a director in the now defunct Associated Packing Company, which is being liquidated under a receiver. At that time, one Frisbe was president, and B. F. Cheshire was accountant of that company. The evidence was such as that it could be found that defendant knowingly concurred in making and publishing a statement of the affairs and pecuniary condition of the packing company as of the date last given. Such statement was sent out and given to different persons. The substance of the statement is as follows:

FINANCIAL STATEMENT OF THE ASSOCIATED PACKING COMPANY,
AS OF THE YEAR ENDING OCTOBER 22, 1919.

Resources

| | |
|---|---|
| Cash in hand | $ 7,032.65 |
| Cash in banks | 77,862.43 |
| Bills receivable | 2,477,628.40 |
| Plant | 165,000.00 |
| Real estate, water and ice supply | 535,000.00 |
| Sand and gravel | 50,000.00 |
| Elevator | 75,000.00 |
| Materials and tools | 45,000.00 |

And other miscellaneous named items such as office
fixtures, stationery, and so on, making in all a

| | |
|---|---|
| total of | $3,489,946.43 |
| Deficit | 144,041.05 |

$3,633,987.48

35,728 SHARES SOLD AT A COST OF 4.032 PER CENT.
[This last item is printed in red printer's ink, and in larger type.]

Liabilities

| | |
|---|---:|
| Owing on real estate contract | $ 50,000.00 |
| Accounts payable | 1,187.40 |
| Capital stock | 2,572,800.00 |
| | $3,633,987.48 |

The indictment charges, in substance, that defendant, being then and there an officer and agent of said packing company, a corporation, etc., did then and there knowingly and feloniously concur in making and publishing a written statement of the affairs and pecuniary condition of said Associated Packing Company, with the intent to produce and give to the shares of stock of such corporation a greater value than they really possessed; that defendant did knowingly and feloniously concur in making and publishing a financial statement of said packing company as of the year ending October 22, 1919 (same as before set out); and that said defendant therein did knowingly falsely state that said packing company had as a resource cash in banks in the sum of $77,862.43, and that 35,728 shares of stock had been sold in said packing company at a cost of 4.032 per cent; and that said written statement, as to the amount of cash in banks and the cost of making the sale of said 35,728 shares of stock of said corporation, was false, and known to the defendant to be false at the time it was made; and that the aforesaid written statement of the financial condition of affairs and pecuniary condition of said corporation was then and there made and published with the unlawful intent on the part of defendant to produce and to have a tendency to produce and give to the shares of stock in said corporation a greater value than they really possessed; and that, in truth and in fact, the said corporation on said date had, as the amount of cash in banks, only about the sum of $73,000; and that the cost of selling said 35,728 shares of stock of said corporation greatly exceeded 4.032 per cent of the amount received therefor, as the defendant well knew.

It appears that, prior to the statement just referred to, another statement was prepared, the total footings or resources of which were the same as in the one set out, and which is substantially the same as the one set out in the indictment, with this exception: that the cash in banks was given as $73,059.43, and there was another item of $4,803 premium on a life insurance policy on the life of the president of the concern, Frisbe. This last item did not appear in the statement first set out. The packing company issued its check for the premium above stated, and delivered it to the agent, who carried it for a time, and during such time it was not considered one of the assets of the insurance company. The application was at first rejected; and a short time afterwards, the application was accepted by another company. The check was not cashed until a week or two after October 22d. The last two items above mentioned, added together, equal $77,862.43, which represents the cash in banks in the statement before quoted. This being so, the State did not, at the trial, and does not now, claim that the item as to cash in banks was false. It will be observed that the indictment charges falsity in the statement as to but the two items: cash in banks and the cost of selling the shares of stock. The State does claim that such last statement was and is false; that, if the actual resources had been set forth and used as the basis for estimating the cost of the sale of stock, it would have approximated 30 or 35 per cent, instead of 4.032 per cent, as represented. The difference between the resources and liabilities, given in the statement as deficit, represents the cost of promotion or sale of stock. The method of arriving at the cost of selling per share was to divide the amount of the deficit by the number of shares. The quotient is 4.032 per cent. Doubtless the theory of the pleader, in drawing the indictment, was that, if the item in the statement as to cash in banks was false, in that it was too large, this would increase the resources and decrease the deficit, and thus make it appear that the cost of selling was lower, more economical, and thus increase the value of the stock. If the amount stated as cash in banks was overstated, it would show that the cost of selling was understated, and therefore false. But when the evidence went in, it was shown that the amount of cash in banks was not false. The question is whether, as a matter of evidence,

the State, in attempting to show the falsity of the cost of selling stock, was confined to the one item as to cash in banks, or whether it could prove, by other evidence, though not pleaded in the indictment, that the cost of selling was false.

It is quite true, as contended by appellee, that the scope of an indictment cannot be enlarged by implication or intendment. And it is true, of course, that the State could not ask a conviction, under the indictment and under the evidence, for anything except the one charge of the falsity as to the cost of the sale of shares. If such other evidence is admissible, then the matter would be controlled by the instructions, and the jury should be told that a conviction could be had only for the one item as to the cost of selling the shares, and that other evidence was admitted only for that purpose, or as bearing upon the question whether such item as to cost of selling was false.

It is quite apparent that, if other items in the statement than cash in banks were overvalued and exaggerated, it would decrease the resources and increase the deficit and cost of selling, and thus tend to show the falsity as to the percentage for selling the shares.

The State contends that it was entitled to show, as tending to show the falsity in regard to the per cent cost of sales of shares charged in the indictment, that other items in the statement of resources were overvalued or exaggerated. Numerous offers of evidence were made, objections to which were sustained. We shall not go into all the offers, but as illustrative, it offered to show that the five items in the statement (plant, real estate and water and ice supply, sand and gravel; elevator, materials and tools) amounting to a total of $870,076.35, represented a total value or cost of only $103,088.71, made up of the following items: 105 acres of land, $95,000; labor $6,968.30; materials $905.56; tools $204.85. It also offered to show that the elevator, plant (old starch plant), sand and gravel, etc., were on and a part of the 105 acres of land purchased, and going with the land. The claim is that these different items were so closely related and connected with the charge in the indictment that the cost of sales of stock was but 4.032 per cent as to be admissible as bearing upon the falsity of that charge, and as having a tendency to affect the market value of the shares. The accountant,

testifying as a witness, said that the item in the statement of $535,000 for real estate and water and ice supply, entered into the determination of the percentage of 4.032 in selling shares; but his answer was struck out, and the State offered to so prove, not only as to that item, but as to the other items in regard to plant, sand and gravel, elevator, etc. Other evidence was offered by the State tending to show that large commissions were paid to agents by the company for selling stock, and other evidence was offered which it claims had a bearing on that matter, the objection to all of which was that the evidence was incompetent, irrelevant, immaterial, and that it did not tend to prove any issue involved in the case. Whether the offered evidence was relevant seems to be the principal ground of objection. The State claims further that the statute involves the elements of intent, knowledge, scheme, plan, and motive. The State claims further that the statement as to the cash in banks is but one element tending to show the falsity of the statement as to the cost of selling the shares; that the stated cost of selling shares does not depend alone upon the alleged false statement in respect to the cash in banks.

No attack was made upon the indictment by defendant, and there is no claim that the indictment does not charge an offense under the statute quoted, so that the question presented is not whether the indictment is faulty. The indictment does not charge that the defendant was guilty of a crime for each false statement in the statement. The charge is that the defendant, as an officer of the packing company, knowingly concurred in making, publishing, or posting any written report, etc., which, in the language of the statute, contains *any* material statement which is false, etc. The gist of the charge is knowingly concurring in making, publishing, etc., the statement. It may contain one or more false statements. It could have been charged in the indictment that all or any number of the items in the financial statement were false. It could have alleged only that the statement as to the cost of sales of stock was false; and in that case, any evidence tending to show the falsity of such statement would be relevant and admissible, although a conviction could be had only upon that one charge.

In the instant case, two items are alleged to have been false.

The proof fails as to the first. Had it been alleged that all the items in the statement were false, it would not be incumbent upon the State to prove all, if it proved *any*. The falsity of two items having been alleged, and the evidence having failed as to the first, the one item as to the cost of sales would remain. If that alone had been alleged, it would seem clear that the State would be entitled to prove the other items of alleged resources to be exaggerated, if that would show that the one item as to the cost of sales was false. We think that the evidence as to such other items would have such a tendency.

Only such facts need be stated in the indictment as are required to be proved on the trial. It is, of course, unnecessary to plead all the evidence in the indictment. Thus, in charging a threat to kill, the fact or the conclusion may be stated, without setting out the words used. *State v. O'Mally*, 48 Iowa 501. In that case, it was held that, the gist of the offense being the threat, the fact that it was directed against two persons would not constitute it two offenses. As to the point that the State is not required to prove the falsity of all matters even alleged in the indictment to be false, see *State v. Hessian*, 58 Iowa 68. That was a larceny case, and it was held that, though several articles were alleged in the indictment to have been stolen, the State was not required to prove that all the property alleged to have been taken was stolen, and that a conviction may be had if it is shown that a part of the property was stolen. Suppose an indictment charges the larceny of two horses of a certain value, a conviction might be had if the proof showed the larceny of but one; or if it was made to appear that one of the two was of no value, clearly the State would not be precluded from showing the value of the other; and in that case, evidence as to the weight, and other matters bearing upon the question of value as to the other one, would be relevant. So it is in the instant case. The fact that the State failed in its proof as to the alleged falsity of cash in banks does not preclude the State from proving the falsity of the other charge. So, too, the stealing in one transaction of the property of different owners constitutes but one offense. *State v. Larson*, 85 Iowa 659; *State v. Sampson*, 157 Iowa 257. Appellee cites cases to the proposi-

5. INDICTMENT AND INFORMATION: issues, proof, and variance: disjunctive allegation.

tion that the expression of one thing is the exclusion of all others, and that the charges of misstatement in this indictment of one item in the column of figures on resources, and in the computation derived from the total of such columns, exclude, by implication, any charge of other items in such column. This might be true if a conviction were sought for the alleged falsity of other items. But that is not now the question. As said, the State now relies only upon the alleged falsity of the statement as to the percentage of cost of sale, and claims that the exaggerations or overvaluations of other items are competent, as a matter of evidence, to prove the falsity of this one charge; and we think this is so. It has been held that one fact is relevant to another when, according to the common course of events, the existence of one, taken alone or in connection with the other facts, renders the existence of the other certain or more probable. *Locke v. Kraut*, 85 Conn. 486, 489. An offer to prove a fact in evidence involves an assertion by him that such a relation exists, in reason, as a matter of logic, between the fact offered and a fact in issue, that the existence of the former renders more probable or improbable the existence of the latter; and the relation thus asserted is termed relevancy. It is, therefore, a basic rule of evidence that whatever facts are logically relevant are legally admissible. 22 Corpus Juris 158, and numerous Iowa cases cited in the note. See, also, 16 Corpus Juris 543, 544; *Worez v. Des Moines City R. Co.*, 175 Iowa 1; *State v. Lee*, 91 Iowa 499; 1 Wharton on Criminal Evidence (10th Ed.) 147; 1 Jones on Evidence 894, 897; 3 Rice on Evidence 69.

It is suggested, rather than argued, by appellee, that the statement as to the sale cost of shares of stock was not a part of the financial statement, because a financial statement is a

**6. CORPORATIONS: officers: feloniously false statements.** tabulation of assets and liabilities; but it is printed on the statement, and as a part of it, and as a result of certain computations. It is so printed as to emphasize it as a matter of importance. The purpose of doing so, no doubt, was to show that the company was being economically managed, and that all but a small part of sales of stock of the company went into the company's treasury; and thus it had a tendency to give the shares of stock in

the corporation a greater value,, and to show that it was a desirable investment. This makes it a material statement, under the statute. Evidently, the purpose of the statute was to prevent that sort of thing.

We have not set out all the evidence on the subject, nor have we attempted to set out the evidence tending to show that defendant knowingly concurred in making and publishing the statement, knowledge, intent, etc. We have attempted to confine the discussion to the one proposition as to whether the offered evidence was relevant and admissible.

We are of opinion that the trial court erroneously excluded evidence offered by the State in the respects indicated. The cause is reversed; but, defendant having been acquitted, there is no remand.—*Reversed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.