NEVA RACHEL KAYSER, Appellee, v. OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Appellant.

No. 45708.

JANUARY 20, 1942.

Donnelly, Lynch, Anderson & Lynch and William Dallas, for appellee.

Grimm, Elliott, Shuttleworth & Ingersoll, for appellant.

MITCHELL, J.—Plaintiff commenced this action at law, alleging that on the 6th day of July, 1938, the Occidental Life Insurance Company of California, a corporation, engaged in business in the state of Iowa, issuing policies of insurance upon the lives of persons, duly issued and caused to be delivered to Walter John Kayser, a policy of insurance upon his life in which the plaintiff, the wife of said insured, was named as sole beneficiary. That under the terms of said policy the insurance company agreed to pay to the beneficiary $1,000 upon receipt of due proof of death of the insured. That she has duly performed all the conditions of the policy demanded of her. The defendant

filed answer, admitting that the policy was issued as set out in the opinion, and then states that the policy described in plaintiff's petition and upon which action was brought was obtained from the defendant by false and fraudulent representations made by the assured, Walter John Kayser. That said representations were made in the written application for said policy. The defendant then sets out that part of the application containing statements which it claims were false, fraudulent and untrue and alleges that the said Walter John Kayser knew and had actual knowledge that said statements and representations were not true. That the defendant company believed the said statements to be true and relied thereon. That it would not have issued said policy had it known that said statements in said application were false and untrue. That the defendant company immediately upon discovery of the falsity of said representation tendered to plaintiff all premiums paid by the said Kayser on said policy in the sum of $33.60 and all accrued costs in this action.

Plaintiff filed reply in which she denied each and every statement and allegation in defendant's answer except such as she expressly admitted. She admitted that a true and correct copy of the policy was attached to the defendant's answer. She admitted that Walter John Kayser was examined by the defendant's medical examiner. She denied that a true and correct copy of the application referred to in said answer was attached to said policy or indorsed thereon.

The first trial of this cause came on for hearing on the 21st day of October, 1940, and was submitted to a jury, which reported in open court that they were unable to agree upon a verdict and were discharged. On the 13th day of November, 1940, the cause came on for trial a second time. Evidence was offered by the plaintiff and by the defendant and at the close of all the evidence the plaintiff made a motion for a directed verdict and the lower court on the 18th day of November, 1940, sustained the motion and directed the jury to return a verdict in favor of the plaintiff for the sum of $1,050. On the 15th day of January, 1941, the defendant perfected an appeal from the

ruling of the trial court sustaining plaintiff's motion for directed verdict.

The first problem which we are confronted with is a motion made by the appellee to dismiss this appeal for the following reasons:

First. The record shows that on the 15th day of January, 1941, no judgment had been entered or spread of record from which an appeal could be taken. That such final judgment was not entered and spread of record until after appellant's abstract of the record had been served and filed.

Second. The ruling of the trial court sustaining plaintiff's motion for directed verdict was not an appealable order.

Third. The record fails to show that an appeal was ever taken or perfected from any judgment or order of the District Court of Linn County, Iowa, as prescribed by statute.

The appellant first calls our attention to the fact that the appellee caused the clerk to enter an alleged and purported judgment on May 22, 1941. That the appellant commenced a separate action in October of 1941 in the District Court of Linn County, Iowa, to correct the record and expunge the alleged and purported entries made by the clerk. On hearing, the relief asked by appellant was denied and an appeal from this ruling has been taken to the Supreme Court of Iowa and by order of Chief Justice Miller the appeal on the merits in this case and the appeal from the ruling on the motion and petition to correct the record were ordered consolidated for the purposes of appeal. A separate opinion will be rendered in the second cause.

█ The question which we are confronted with here is whether or not a ruling sustaining a motion for directed verdict made by the plaintiff is an appealable order. Code section 12823 in defining orders which are appealable states in part as follows:

"12823 An appeal may also be taken to the supreme court from:

"* * *

"4. An intermediate order involving the merits or materially affecting the final decision."

In the case of Clark v. Van Loon, 108 Iowa 250, 252, 79 N. W. 88, 89, 75 Am. St. Rep. 219, this court said:

"The notice of appeal is set out in the record, and states that the appeal is taken from 'the findings and judgment' of the trial court, but the record fails to show that a judgment was rendered on the verdict. An appeal from the verdict of a jury is not allowed. Jones v. Givens, 77 Iowa, 173. See, also, Boyce v. Railway Co., 63 Iowa, 70. But the statute provides that an appeal may be taken from an intermediate order involving the merits or materially affecting the final decision. The action of the trial court in sustaining the motion to direct a verdict and in directing a verdict constituted such orders; and, treating the appeal as from them, we proceed to consider the only questions presented which we find it necessary to determine."

In Gibson v. Iowa Legion of Honor, 178 Iowa 1156, 1160, 159 N. W. 639, 641, this court said:

"Responding to what it treated as a challenge of our jurisdiction, appellant amended, setting out a judgment against it, but failed to say when it was entered. Attack on this silence is made by motion to strike. Rule 19, and Chapter 205, Acts of the Thirty-third General Assembly, require, for an appealable judgment, that it be entered before abstract is filed. There is no certification, and we must hold that no final judgment is here for review. But here the absence of final judgment becomes material only on the further attack that a notice of appeal is too indefinite which does not say in terms from what appeal is taken. While we cannot here apply the rule that, presumptively, appeal is taken from final judgment, we can and should presume that it was taken from the order directing a verdict for appellee. Clark v. Van Loon, 108 Iowa 250. * * * The record exhibits but one thing from which an appeal will lie, to wit: the order directing a verdict against the defendant. The notice of appeal must be held to refer to that order. It follows that the appeal must be entertained, but be limited to the review of that one order.

"This disposes of a number of contentions as to whether a motion to set aside a verdict is the equivalent of a motion for new trial; and on whether the motion to set aside was filed in time; and whether assignments complaining of the overruling of

the motion to set aside are sufficiently specific under the rule. This is so because the order sustaining motion for directed verdict in favor of plaintiff is reviewable here, though no motion to set aside judgment or for new trial was filed. Checkrower Co. v. Bradley, 105 Iowa 537, at 547.''

In State v. McDougal, 193 Iowa 286, 287, 186 N. W. 929, 930, this court said:

''At the outset, appellee raises the question that this court has no jurisdiction to entertain the appeal, for the reason that no final judgment was entered against the State. The record does not show a final judgment against the State for costs. But, as said, the court sustained defendant's motion for a directed verdict of acquittal, and directed the jury to return such a verdict, and such verdict was signed and returned to the court, as directed. This was final as to the defendant. * * * We have held that the ruling on a motion to direct a verdict is appealable, and in some cases, if necessary, the appeal will be considered as taken from an order directing a verdict, where the record fails to show that any judgment was rendered. Clark v. Van Loon, 108 Iowa 250; Gibson v. Iowa Legion of Honor, 178 Iowa 1156, 1179. * * * We think that appellee's objection as to this feature of the case is not well taken.''

Thus we find that this court has definitely said that a ruling by the trial court sustaining a motion for a directed verdict by the plaintiff is an intermediate order involving the merits or materially affecting the final decision and is an appealable order and it is an appealable order irrespective of whether or not a judgment was ever entered and spread of record. It necessarily follows that the motion of the appellee to dismiss the case must be, and it is, overruled.

▬ It is first argued that the trial court erred in sustaining ground 1 of appellee's motion for directed verdict, said ground reading as follows:

''1. That the uncontradicted evidence shows that the Defendant is a life insurance company doing business under the provisions of the Iowa law, and that at the time and upon the

issuing of the policy of insurance herein sued upon there was not attached to such policy or endorsed thereon a true copy of the application of the assured, Walter John Kayser, which by the terms of such policy was made a part thereof and which affected the validity of such policy, as required by Section 8772 of the Iowa Code; that by reason of the failure of the Defendant to comply with the requirements of Section 8772 of the Code it is precluded by Section 8773 of the Code from pleading, alleging, or proving the alleged defense sought to be asserted in this case."

The ruling of the court sustaining this motion was:

"THE COURT: The Plaintiff's motion for a directed verdict is sustained, and the jury is directed to return a verdict in favor of the Plaintiff for the sum of $1,050.00. (Ex.)"

It is the appellee's contention that the copy of the application attached to the policy is not a true copy because at the time Part I of the application was signed by the insured, the answer to question 4 (a), requiring assured to state his business and post-office address, was left blank and that this was filled in by the agent Fry after his return to his office. Fry inserted, it is claimed, without the knowledge or consent of the assured, the following:

"111-13 St. S. E. Cedar Rapids"

The appellee also argues that the evidence shows without dispute that at the time Part I was filled out by the assured, the application was for a policy to be dated June 27th. That after the application was received by the insurance company, someone drew a line through "27 June" and inserted instead "Date Policy 7-6-38".

Code sections 8772 and 8773 are as follows:

"8772 Application for insurance—duty to attach to policy. All life insurance companies or associations organized or doing business in this state under the provisions of the preceding chapters shall, upon the issue of any policy, attach to such policy, or indorse thereon, a true copy of any application or rep-

resentation of the assured which by the terms of such policy are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy, or, upon reinstatement of a lapsed policy, shall attach to the renewal receipt a true copy of all representations made by the assured upon which the renewal or reinstatement is made. [C97,§1819; C24, 27, 31, 35,§8772.]

"8773 Failure to attach—defenses—estoppel. The omission so to do shall not render the policy invalid, but if any company or association neglects to comply with the requirements of section 8772, it shall forever be precluded from pleading, alleging, or proving such application or representations, or any part thereof, or the falsity thereof, or any part thereof, in any action upon such policy, and the plaintiff in any such action shall not be required, in order to recover against such company or association, either to plead or prove such application or representation, but may do so at his option. [C97,§1819; C24, 27, 31, 35, §8773.]"

It is contended by the appellant that Part I is no part of the assured's application nor is it a representation of the assured, and that any change made thereon would not affect the application. Both of the alterations relied upon by the appellee are set out in Part I of the application. Whether Part I of the application is in reality a part of the application that must be attached to the policy, we do not find necessary to pass upon. The date of the policy is no representation of the assured. It was filled in by the agent as 27th day of June and was later changed after it left the agent's hands to read 7-6-38. This date was not one of the numbered questions in Part I of the application which the assured was to answer. It was in a separate column entitled "Memorandum of Policy Applied For" and the blanks therein were obviously to be filled in by the agent as the information asked for is information which only he and not the applicant could supply. The alleged change in date in the case at bar is immaterial. There is no claim made by either party that the date that this policy was issued is material to any issue in this case except the claim of the appellee, that because of this

change, a true copy was not attached. The date of the policy is not an issue in this case. The other reason urged by the appellee why a true copy was not attached is the insertion of the business address of the assured by the agent. This also appears on Part I of the application. It is not material as to any issue in this case except that raised by the appellee that, because it was inserted after the insured's signature was attached, a true copy of the application was not attached to the policy.

What was the purpose of Code section 8772? Would the mere fact that there was a dotting of an "i" or the crossing of a "t" made by the agent after the insured had signed the application prevent the insurance company from raising a defense of fraud under the above statute? We cannot believe that this was the intention of the legislature in passing Code section 8772. In Johnson v. Des Moines Life Ins. Co., 105 Iowa 273, 276, 75 N. W. 101, 102, this court defined the purpose of the Iowa statute as:

"An evident purpose of this statute is that when the application is made a part of the contract, as in this case, a true copy must be attached to the policy, so that the writings composing the contract may all appear together, and that the insured may be in possession of the evidence of what his contract is."

In the case of Seiler v. Economic Life Assn., 105 Iowa 87, 91, 74 N. W. 941, 942, 43 L. R. A. 537, cited to us by the appellee in her brief, we find the following statement. We quote:

"It is argued on behalf of the appellant that all of the statements and representations made by the assured were in the copy that was attached to the policy, and that he could not have been prejudiced by the omission of his signature, for he must have known that he signed the original. But it seems to us that the very purpose of the statute was to avoid, so far as possible, any dispute as to the assured's knowledge of the contract. The requirement is that a copy of the application shall be attached. We do not understand this to call for a facsimile, but it certainly demands at least a substantial reproduction of the instrument. The signature is an essential part of the application, and all that is essential in the original should appear in the copy."

Thus the Iowa court has said that this Code section did not call for a facsimile but it demanded a substantial reproduction of the application. The purpose of this statute was to compel the insurance companies, who at various times have had blank forms prepared that were long and difficult to understand, to attach to the policies a true copy of the application so that the insured might have these statements before him and that he might know his contract and if it contained errors, have them rectified before it became too late. Certainly under this record the statute has been complied with. The assured had the complete evidence of his application in his possession at all times. There is no claim made that there was any omission from the application. There was attached to the policy a photostatic copy of every representation made by the assured. The fact that other matters may have been included in the photostatic copy which are not claimed to be representations of the assured cannot make his copy any less a true copy.

The second ground of the motion for directed verdict which it is claimed by the appellant the trial court erred in sustaining is as follows:

"2. That there has been introduced in evidence a written instrument, Defendant's Exhibit '2', claimed to have been signed and executed by the assured at the time of the delivery of the policy, which instrument was kept and retained by the Defendant; that the uncontradicted evidence shows that such instrument contains certain written statements and representations of the assured which affect the validity of such policy; that Exhibit '2' was never attached to the policy herein sued upon, or endorsed thereon as required by Section 8772 of the Iowa Code. That by reason of such failure the Defendant is precluded from pleading, alleging or proving the alleged defense sought to be asserted in this action."

It is the contention of the appellee that the instrument identified as defendant's Exhibit 2 was such a substantial part of the application that a copy was required to be attached to the policy.

Defendant's Exhibit 2 is as follows:

"Received of                    Date July 20, 1938
Occidental Life Insurance Company
(Of California)
Home Office: Los Angeles

Policy No. 1260297, which I find satisfactory to me. All alterations or corrections in my original application, as shown in the photographic copy attached to said policy have been examined by me and found satisfactory and correct. The Beneficiary Designation, Special Settlement Agreement, Supplemental Agreements and Indorsements, if any, attached to the Policy have been read and found satisfactory, and I hereby accept said Policy subject to all the terms and conditions of any such Agreements and/or Indorsements.

(Sgd.) Walter J. Kayser
(insured)"

The policy was mailed by the company to its soliciting agent Walter Fry in Cedar Rapids. At the time the policy was received by Fry, it had attached to it a photostatic copy of the application which has been referred to. On July 20, 1938, the day Fry received the policy from the company through the mail, he called at the Kayser home. He had with him at that time the policy and the instrument marked defendant's Exhibit 2. This instrument was signed by the assured when he received his policy. Can it be said that Exhibit 2 is a part of the application that the insured signed at the time that he sought this policy of insurance and therefore should be attached to the policy? Exhibit 2 was not in existence until after he had received the policy. It is nothing more or less than a receipt for the policy. It is not a representation of the type which section 8772 requires to be attached to the policy. In Long v. Northwestern National Life Ins. Co., 186 Iowa 369, 373, 169 N. W. 386, 387, this court said:

" 'A representation has been defined as an oral or written statement, made by the insured to the insurer, of certain facts or conditions tending to induce the insurer to assume the risk, by diminishing the estimate he would otherwise have formed of it.' 2 Cooley's Briefs on the Law of Insurance 1127.''

The trial court erred in sustaining ground 2 of the motion to direct.

■ Finally, it is argued that the trial court erred in sustaining the grounds of the motion because the appellant had failed to prove fraud of the assured.

The record shows that Walter John Kayser in the application which he signed, photostatic copy of which is attached to the policy, stated that he did not have nor had he ever had any illness or disease. That he had never consulted any physician; that he had never been operated on save for a broken right hip in 1923. That he never had been X-rayed. That he had never been a patient in any hospital or sanitarium. That he was in good health. There is evidence in the record from which the jury could have found that these statements were false. That the assured had not broken his hip when a boy, but had been operated upon for osteomyelitis which he contracted through sickness. That he had been afflicted with this steadily for more than 14 years. That he had been attended by numerous physicians at the University Hospital at Iowa City and by at least two in Independence. That he had been a patient in the University Hospital appellant claims on 18 different occasions and at the Peoples Hospital in Independence on at least 4 occasions. That he was far from being in good health, the victim of a dread incurable disease, which he must have known would bring him to an early and untimely end. In fact, appellee in her brief and argument makes the following statement. We quote:

"The record shows that Kayser suffered off and on from an affliction which the doctors diagnosed as osteomyelitis of the right hip, or an inflammation of the bone constituting the hip joint, and that on different occasions throughout the years he did consult different doctors, who relieved his condition by making incisions in the hip which relieved the accumulation of pus."

No good could possibly be accomplished by setting out the evidence. Certainly there was sufficient to submit it to a jury.

Appellant filed a motion to strike appellee's amendment to the abstract and same is hereby overruled.

The lower court erred in sustaining the motion to direct and it necessarily follows that this case must be and is hereby reversed.—Reversed.

CHIEF JUSTICE and all JUSTICES concur.